**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| DERWIN BELL,<br><br>　　Plaintiff,<br><br>　　v.<br><br>JAMES E. CLARKE,<br>*Substitute Trustee*,<br>RENEE DYSON,<br>*Substitute Trustee*,<br>SHANNON MENAPEACE,<br>*Substitute Trustee*,<br>WELLS FARGO BANK, N.A.,<br>*As Trustee Under the Pooling and Servicing*<br>*Agreement Relating to Impac Secured Assets*<br>*Corp., Mortgage Pass-Through Certificates,*<br>*Series 2005-2*, and<br>OCWEN LOAN SERVICING LLC,<br><br>　　Defendants. | Civil Action No. TDC-15-1621 |

**MEMORANDUM OPINION**

Plaintiff Derwin Bell filed suit alleging mortgage fraud under the Maryland Mortgage

Fraud Protection Act ("MMFPA"), Md. Code Ann., Real Prop. §§ 7-401, *et seq.* (2015),

violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*

(2012), and the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com.

Law §§ 14-201, *et seq.* (2013), and slander of title by Defendants James E. Clarke, Renee Dyson,

Shannon Menapeace, Wells Fargo Bank, N.A. ("Wells Fargo"), and Ocwen Loan Servicing LLC

("Ocwen").  Pending before the Court is Defendants' Motion to Dismiss.  The Motion is fully

briefed and ripe for disposition.  No hearing is necessary to resolve the issues.  *See* D. Md. Local

R. 105.6.  For the reasons set forth below, the Motion is GRANTED.

**BACKGROUND**

The following facts are presented in the light most favorable to Bell, the nonmoving party:

**I.     Bell's Mortgage Loan**

On October 14, 2005, Bell received a $228,000 mortgage loan from Intervale Mortgage Corporation ("Intervale").  Bell's promissory note (the "Note") was secured by a deed of trust ("the Deed") on real property owned by Bell at 626 University Drive in Waldorf, Maryland (the "Property").  The Deed named Intervale as the lender and Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee for the lender and as the beneficiary.[1]  The Deed provided that the Note could be sold without prior notice to Bell.

At some point, through securitization, Bell's mortgage loan was pooled with other mortgages into a mortgage-backed security.[2]  It was one of several mortgages transferred to a trust (the "Trust") governed by a "Pooling and Servicing Agreement Relating to Impac Secured Assets Corp., Mortgage Pass-Through Certificates, Series 2005-2" (the "PSA").  The PSA named Wells Fargo as Trustee.  The PSA, governed by New York law, also set the terms by which mortgages were to be transferred to the Trust.  According to Bell, the Trust closed on December 29, 2005, after which it could no longer accept new mortgages.

---

[1]   For purposes of the Motion to Dismiss, the Court considers the records attached to Bell's Complaint and the Defendants' Motion to Dismiss, specifically, the Note, the Deed, excerpts from the Pooling and Servicing Agreement, the Assignment of the Deed, and the Deed of Appointment of Substitute Trustees.  These records are integral to the Complaint and are of undisputed authenticity.  *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[2]   A "mortgage-backed security," and likewise "securitization," is established when a financial institution purchases a mortgage from the original lender and pools that mortgage with others in an investment instrument that can be sold.  *See Montgomery Cty., Md. v. Fed. Nat'l Mortg. Ass'n*, 740 F.3d 914, 918 (4th Cir. 2014); *Deutsche Bank Nat'l Tr. Co. v. Brock*, 63 A.3d 40, 42 (Md. 2013).

On October 11, 2012, MERS, as the nominee for Intervale, executed an assignment of the Deed to Wells Fargo as Trustee (the "Assignment").  Pangmee Yang signed the Assignment on behalf of MERS.  The Assignment identified Yang as an Assistant Secretary for MERS.  Bell claims that Yang is not employed by MERS.

On September 4, 2013, Ocwen, as Attorney-in-Fact for Wells Fargo in its role as Trustee, executed an Appointment of Substitute Trustees.  The Appointment stated that the Trust was the holder of Bell's Note.  On February 19, 2014, the Substitute Trustees—Defendants Clarke, Dyson, and Menapeace—initiated a foreclosure action against Bell in the Circuit Court for Charles County, Maryland.  As part of the foreclosure, the Substitute Trustees submitted documents to the court asserting that Bell's mortgage loan was in default and that the Trust had the authority to foreclose on the Property.  The Property was sold at a foreclosure sale, but the sale has yet to be ratified.[3]

## II.    Procedural History

On April 30, 2015, Bell filed his Complaint in the Circuit Court for Charles County.  He claimed that Defendants committed mortgage fraud under the MMFPA, violations of the FDCPA and MCDCA, and slander of title by representing that the Trust was the holder of the Note and had the authority to foreclose on the Property, and that Bell owed loan payments to Wells Fargo.  Defendants made these representations in the Assignment, the Appointment of Substitute Trustees, the Notice of Default filed in the foreclosure action, and Ocwen's reports to credit bureaus.  Among other relief, Bell seeks statutory, compensatory, and punitive damages; a declaratory judgment stating that Bell owns the Property and is entitled to exclusive possession,

---

[3]    Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the docket in Bell's foreclosure case, *James E. Clarke, et al. v. Derwin W. Bell*, Case No. 08C14000398, available through the Maryland Judiciary's website at http://casesearch.courts.state.md.us.

that Defendants do not have an interest in the Property, and that foreclosure was wrongful; and an injunction nullifying the Assignment, the Appointment of Substitute Trustees, and the Notice of Default.

On June 3, 2015, Defendants removed the case to this Court on the basis of federal question jurisdiction.  On June 10, 2015, Defendants filed a Motion to Dismiss.  On July 20, 2015, Bell filed an Opposition to the Motion.  On August 14, 2015, Defendants submitted a Reply to Bell's Opposition.

<b>DISCUSSION</b>

**I.      Standing**

Defendants argue that Bell's claims fail because he does not have standing to challenge the Assignment or the PSA.  Defendants' standing argument is analyzed as a claim under Federal Rule of Civil Procedure 12(b)(1) that the Court lacks subject matter jurisdiction.  *See Taubman Realty Group Ltd. P'ship v. Mineta*, 320 F.3d 475, 480-81 (4th Cir. 2003) (analyzing a claim of lack of standing as a challenge under Rule 12(b)(1)).

**A.      Legal Standard**

Federal Rule of Civil Procedure Rule 12(b)(1) allows a defendant to move for dismissal when it believes that the plaintiff has not met its burden to establish subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).  When a defendant asserts a lack of subject matter jurisdiction under Rule 12(b)(1), the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

### B.      Prudential Standing

"The standing doctrine has both constitutional and prudential components." *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009). Constitutional standing relates to whether there is an actual case or controversy under Article III of the Constitution; prudential standing consists of "several judicially self-imposed limits on the exercise of federal jurisdiction." *Allen v. Wright*, 468 U.S. 737, 750-51 (1984). Only prudential standing is at issue in this case. One requirement of prudential standing is that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Bishop*, 575 F.3d at 423 (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Under both Maryland and New York law,[4] a person cannot sue under a contract when that person is neither a party to nor a third-party beneficiary of the contract. *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014); *120 W. Fayette v. Mayor of Baltimore*, 43 A.3d 355, 368 (Md. 2012). Consequently, mortgagors generally lack standing to attack transfers of their mortgages through assignments and PSAs to which they are not parties. *See, e.g.*, *Wolf v. Fed. Nat'l Mortg. Ass'n*, 512 F. App'x 336, 342 (4th Cir. 2013) (finding that the borrower, a non-party to the assignment of her promissory note, lacked standing to challenge the assignment); *Rajamin*, 757 F.3d at 86-87 (finding that the mortgagors lacked standing under New York law to challenge transfers of their mortgages to a trust in violation of a PSA to which they were not a party);

---

[4]   Bell's standing to challenge the Assignment and violations of the PSA is a matter of state law. *See Wolf v. Fed. Nat'l Mortg. Ass'n*, 512 F. App'x 336, 342 (4th Cir. 2013) (applying Virginia law to determine if a borrower had prudential standing to challenge a mortgage assignment). The Property is located in Maryland, and the Deed states that it is governed by the law of the state in which the Property is located, but the PSA contains a provision stating that it is to be interpreted under New York law. The Court need not decide which state's law governs whether Bell has standing because the outcome would be the same under either Maryland or New York law. *See Lowry's Reports, Inc. v. Legg Mason, Inc.*, 271 F. Supp. 2d 737, 750 (D. Md. 2003). ("Choice-of-law analysis becomes necessary . . . only if the relevant laws of the different states lead to different outcomes.").

*Rogers v. Bank of America*, 787 F.3d 937, 939 (8th Cir. 2015) (holding that a plaintiff lacked standing to challenge mortgage assignments as allegedly violating a PSA governed by New York law to which the plaintiff was not a party); *see also Stanworth v. Bank of America, N.A.* (*In re Stanworth*), 543 B.R. 760, 773 & n.19 (Bankr. E.D. Va. 2016) (collecting cases).

Bell's requests for a declaratory judgment that Defendants have no legal interest in the Property and for an injunction cancelling the Assignment, the Appointment of Substitute Trustees, and the Notice of Default are direct attacks on the transactions transferring the Note and Deed to the Trust. Bell bases his claims for declaratory and injunctive relief on his assertion that the transfer of his mortgage to the Trust was ineffective because it violated the PSA and because MERS did not properly execute the Assignment. But Bell was not a party to either the PSA or the Assignment, nor was he an intended third-party beneficiary of either of those agreements. *Wolf*, 512 F. App'x at 342; *Rajamin*, 15 F.3d at 86-87. As Bell acknowledged when he signed the Deed, the Note could be transferred without notice. Such a transfer affects the rights and obligations of the parties to the transfer, not Bell, whose obligation to make monthly payments remains. *Wolf*, 512 F. App'x at 342. Moreover, contrary to Bell's assertions, provisions in the Deed authorizing Bell to raise defenses in a foreclosure proceeding and obligating him to defend the title to the Property do not give him standing to assert other parties' rights under different contracts. Thus, Bell lacks standing to challenge the Assignment and assert violations of the PSA.

Some courts have allowed plaintiffs to challenge mortgage transfers when plaintiffs allege facts that would render the transfers void, as opposed to merely voidable by parties to the transactions. *See, e.g., Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 291 (1st Cir.

2013).  The deficiencies identified by Bell, however, would only render the transfer of the Note and Deed to the Trust voidable.

Bell argues that the transfer of the Note and Deed to the Trust failed to comply with the terms of the PSA because the Note did not contain the indorsement required by the PSA and because the transfer occurred after the closing date of the Trust.  These violations of the PSA would make the transfer voidable, not void.  *Rajamin*, 757 F.3d at 83, 87-90 (finding that failure to comply with the terms of PSAs in the acquisition of loans, such as a requirement to transfer the note with all required indorsements, renders the assignments voidable, not void); *Reinagel v. Deutsche Bank Nat'l Tr. Co.*, 735 F.3d 220, 228 (5th Cir. 2013) (holding that the transfer of a mortgage to a trust after the trust's closing date would render the transfer voidable).

Bell also claims that the Trust did not acquire a valid interest in the Property because the Assignment was signed by Yang, who was not employed by MERS, the assignor.  But the execution of an assignment by an unauthorized party would only render the assignment voidable by the assignee—in this case, Wells Fargo.  *See Reinagel*, 735 F.3d at 226 (holding that even if the person signing a mortgage assignment was not a corporate officer of the assignor, the assignment was not void, but voidable).  Under Maryland law, even if there were fraud involved in the Assignment, "contracts obtained by fraud are not absolutely void, but are voidable at the election of the parties affected by the fraud and binding until properly avoided."  *Julian v. Buonassissi*, 997 A.2d 104, 119–20 (Md. 2010) (internal quotation marks omitted) (holding that a conveyance of a deed of trust missing legally required disclosures is voidable at the election of the parties, not void *ab initio*).  Therefore, Bell cannot mount a direct attack on the transfer of the Note and Deed to the Trust.  As a result, his claims for a declaratory judgment and injunctive

relief to void the assignments and declare that Defendants have no legal interest in the Property must fail. *See Rajamin*, 757 F.3d at 83, 86-91; *Reinagel*, 735 F.3d at 223, 226-28.

## II.    Failure to State a Claim

Defendants argue that Bell's claims for mortgage fraud, violations of the FDCPA and MCDCA, and slander of title should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### A.    Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

### B.    Causes of Action

Each of Bell's remaining causes of actions is premised on his assertion that Defendants falsely represented that the Trust had the right to enforce the Note and Deed and foreclose on the Property.

To state a claim for mortgage fraud under the MMFPA, the plaintiff must show that the defendant knowingly or recklessly made a false representation to the plaintiff with the intent to

defraud the plaintiff, and that the plaintiff's reasonable reliance upon that misrepresentation caused her compensable injury. *Ademiluyi v. PennyMac Mort. Inv. Tr. Holdings I, LLC*, 929 F. Supp. 2d 502, 530 (D. Md. 2013). Bell asserts that Defendants committed mortgage fraud by bringing a foreclosure action knowing that the Trust had no right to foreclose because the Trust's rights were based on invalid transfers.

The FDCPA is violated when (1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector under the FDCPA, and (3) the defendant has engaged in an act or omission in violation of the FDCPA. *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012)**.** Among the prohibited acts are using any false, deceptive, or misleading representation in the course of debt collection. 15 U.S.C. § 1692e; *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996). Bell's claim is that Defendants violated this law by using false representations that the Trust could enforce the Note in order to collect debts owed on the mortgage.

The MCDCA bars a debt collector from claiming, attempting, or threatening to enforce a right "with knowledge that the right does not exist" and from disclosing or threatening to disclose information "which affects the debtor's reputation for credit worthiness with knowledge that the information is false." Md. Code Ann., Com. Law § 14-202(3), (8). Bell alleges that Defendants violated the MCDCA by attempting to assert the Trust's right to enforce the Note despite knowing that the Trust did not have that right, and by disclosing false information to credit reporting agencies based on their false claim that Bell owed Wells Fargo payments under the Note.

Finally, Bell asserts a claim for slander of title, which requires a showing that the defendant maliciously published a false statement derogatory of the plaintiff's title to property,

causing special damages.  *Rounds v. Md.-Nat'l Capital Park & Planning Comm'n*, 109 A.3d 639, 663 (Md. 2015); *Beane v. McMullen*, 291 A.2d 37, 49 (Md. 1972).  Bell's claim is that Defendants drafted, executed, and used documents asserting the Trust's right to foreclose, and thus placed a cloud on Bell's title, knowing that the Trust lacked such a right.

Thus, each of these claims requires plausible allegations that Defendants made false representations about the Trust's right to enforce the Note and Deed.  Because Bell does not allege facts sufficient to establish that the Trust lacked such authority, each of his claims necessarily fails.

### C.     The Assignment

Bell's claim that the Trust had no right to enforce the Note and Deed is based on several theories.  First, Bell alleges that the Assignment of the Deed from MERS to Wells Fargo is void because it was executed by an individual not employed by MERS.  The signatory, Pangmee Yang, is identified on the Assignment as an Assistant Secretary of MERS.  Bell alleges that she is an employee of Indecomm Global Services, not MERS, but Bell does not dispute that MERS had designated her for that role.  MERS often utilizes employees of its member corporations to execute assignments on its behalf.  *See Culhane*, 708 F.3d at 294.  The practice is not illegal, and assignments executed in this manner are valid.  *Id*.; *see also Reinagel*, 735 F.3d at 226 (finding that a claim that the signatory on an assignment was unauthorized would not void the transfer).  Thus, Bell's assertion that the Assignment was void based on the identity of the signatory fails as a matter of law.

### D.     Violations of the PSA

Bell also asserts that the Trust had no right to enforce the Note based on alleged violations of the terms of the PSA.  His first argument on this front is that, under the PSA, the

Trust could only gain an interest in the Note if the Note was specifically indorsed to Wells Fargo.

Bell's argument founders on the plain language of the PSA.  The PSA states that the Trust must

receive from the seller of the mortgage loan:

> the original Mortgage Note endorsed without recourse in blank or to, "Wells
> Fargo Bank, N.A., as trustee under the Pooling and Servicing Agreement relating
> to Impac Secured Assets Corp., Mortgage Pass-through Certificates, Series 2005-
> 2" with all intervening endorsements showing an unbroken chain of endorsements
> from the originator to the Person endorsing it to the Trustee or, with respect to any
> Mortgage Loan as to which the original Mortgage Note has been permanently lost
> or destroyed and has not been replaced, a Lost Note Affidavit.

Compl. Ex. A, PSA § 2.01(i).  This provision creates three avenues for the Trust to receive

promissory notes:  (1) an indorsement in blank; (2) a specific indorsement to Wells Fargo as

Trustee, with all intervening indorsements; or (3) a Lost Note Affidavit when the original note

has been lost.  Bell's Note bears three indorsements:  (1) a specific indorsement from the lender,

Intervale, to Decision One Mortgage Company, LLC; (2) a specific indorsement from Decision

One to Impac Funding Corporation; and (3) an indorsement without recourse in blank by Impac.

These indorsements trace the chain of title from the lender to Impac, which indorsed the Note

without recourse in blank, in compliance with the PSA.  Bell thus has not stated a plausible claim

that the Trust had no right to enforce the Note based on deficiencies with the indorsement of the

Note.

Bell also claims that the transfer of the Deed to the Trust violated the PSA because it

occurred after the Trust had already closed.  His basis for this claim is that the Assignment of the

Deed from MERS to Wells Fargo was executed and recorded in 2012, long after the Trust closed

on December 29, 2005.  The United States Court of Appeals for the Second Circuit rejected an

identical argument in *Rajamin*, finding that the post-closing execution and recordation of an

assignment did not render the assignment void.  *Rajamin*, 757 F.3d at 82, 91.  The court reasoned

that the language of the PSA itself, which provided that as of the closing date, the mortgages in the securitization pool would be "assign[ed] . . . to the Trustee," officially effected a timely assignment, even if an individualized assignment of the Deed was later executed and recorded after the closing date. *Id.* at 90-91. Here, the PSA contains nearly identical language to that which *Rajamin* found sufficient to effect a transfer of the note. *Compare id. with* Compl. Ex. A, PSA § 2.01 ("The Company, as of the Closing Date, and concurrently with the execution and delivery hereof, does hereby assign, transfer, sell, set over and otherwise convey to the Trustee without recourse all the right, title and interest of the Company in and to the Mortgage Loans identified on the Mortgage Loan Schedule . . . for the benefit of the Certificateholders . . . ."). As in *Rajamin*, Bell does not allege that the Note was not timely transferred to the Trust, just that the individual assignment of the Deed was not executed or recorded until after the closing date.

Likewise, in *Svrcek v. Rosenberg*, 40 A.3d 494 (Md. Ct. Spec. App. 2012), the court found that an assignment of a deed of trust executed and recorded in 2009 was "of no consequence with respect to . . . [the] right to initiate the foreclosure proceeding," because the note was transferred into the securitization pool in 2006, and "once the note was transferred, the right to enforce the deed of trust followed." *Id.* at 507-08. Consequently, Bell has not pleaded facts that demonstrate that the 2012 assignment of the Deed violated the PSA or otherwise prevented the Trust from enforcing the Note and Deed.

Finally, as discussed above, the alleged violations of the PSA would only render the transfers voidable, not void. As such, they remain valid in the absence of a trust beneficiary or a party to the transfers electing to void them. Because Bell was not a party to the Assignment, and

there is no allegation that one of the parties or a trust beneficiary ever acted to void any assignment of the Note or Deed, there is no plausible claim that the transfers were invalid.[5]

Because Bell has not asserted a plausible legal theory under which the Trust lacked authority to enforce the Note and Deed, he has not alleged plausible claims for mortgage fraud, a violation of the FDCPA or the MCDCA, or slander of title.  The Court therefore grants the Motion to Dismiss.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss is GRANTED.  A separate Order shall issue.


Date:  March 16, 2016                                   /s/                        
                                             THEODORE D. CHUANG
                                             United States District Judge

---

[5]   Because Bell has not alleged facts showing that the Trust was not entitled to enforce the Note and Deed, he has also failed to demonstrate that Wells Fargo, as Trustee, lacked authority to appoint Substitute Trustees.